### STATE v. C. V. PARRISH.

(Filed 22 March, 1961.)

**1. Constitutional Law § 23—**

A license to engage in a business or practice a profession is a property right that cannot be suspended or revoked without due process of law.

**2. Constitutional Law § 24—**

The term "law of the land" as used in the State Constitution is synonymous with "due process of law" as used in the Federal Constitution, and requires notice and opportunity to be heard.

**3. Same: Criminal Law § 130—**

Judgment against a defendant convicted of collecting fees in excess of those allowed by Chapter 673, Session Laws of 1945, while acting as an attorney in fact for a professional bondsman may not include a provision suspending the license of the bondsman, who had no notice of the entry of the provision suspending his license and was given no hearing and was not present in court in person or by attorney, since such provision is void as being in violation of Article I, § 17 of the State Constitution.

On *certiorari* from *Bundy, J.,* November 1960 Criminal Term, of NEW HANOVER.

Defendant Parrish was charged in the bill of indictment with collecting fees, as a professional bondsman, in excess of those allowed by law and in violation of the penal provisions of Chapter 673, Session Laws of 1945. The indictment designates Parrish as "Attorney in Fact for J. J. Mohn, a professional bondsman." J. J. Mohn is not named defendant in the bill.

The case was tried at the November 1960 Term. Parrish entered

a plea of *nolo contendre.* Prayer for judgment was continued to the December 1960 Term. At the latter term judgment was entered against Parrish. He did not appeal.

The judgment contained the further recitals and provisions:

> "The Court finds further from the evidence in these cases that the defendant did not have a professional bondsman's license in his own name, but operated as Attorney in Fact for J. J. Mohn, and under the authority of the license of J. J. Mohn, receiving 60% of all bond premiums, and J. J. Mohn receiving 40%, and that forfeitures were paid by them jointly in like proportions;

> "Therefore, under authority of Chapter 673 of the 1945 Session Laws of North Carolina, the license issued in the name of J. J. Mohn, under which J. J. Mohn and the defendant C. V. Parrish have operated, be, and the same is hereby Ordered suspended for a period of two years."

Mohn was not a party to the action. The evidence in the record does not show that he had any knowledge of the excessive fees allegedly collected by Parrish, or that he profited thereby.

Upon learning that judgment had been entered suspending his license, Mohn forthwith applied to this Court for writs of *certiorari* and *supersedeas.* His verified affidavit in support of the application tends to show that he had not been indicted, arrested or tried, had no notice of the entry of judgment suspending his license, was not given a hearing, and was not present in court in person or by attorney when the judgment was entered. There is nothing in the record to contradict these averments. The writs were issued.

Petitioner Mohn assigns error.

*Attorney General Bruton and Assistant Attorney General Jones for the State.*

*W. G. Smith for Petitioner Mohn.*

MOORE, J.   Chapter 673, Session Laws of 1945, provides for the regulation of the business of professional bondsman in New Hanover County. It defines a professional bondsman as "any individual, group of individuals, or corporation, who shall, for pay or profit, execute any bond for the release of any person or property from custody of law, or for the guarantee of any penalty contained in any bond, or recognizance." Among other regulations, it requires that a license be procured before engaging in this business, and establishes a schedule of maximum fees. It declares that the violation of any provisions of the Act shall constitute a misdemeanor. There are two provisions for

suspension or revocation of license: (1) ". . . upon conviction the court shall suspend or revoke the license of such professional bondsman for two years"; and (2) "The Governing Board of the City of Wilmington or the board of county commissioners shall have the power to inquire into the violation of any of the provisions of this Act and to revoke the license of any professional bondsman upon satisfactory proof of such violation, after said bondsman has been given an opportunity to be heard in his defense."

The petitioner has not been indicted, arrested, tried or convicted for the violation of any of the provisions of the Act in any criminal court. Furthermore, his conduct as a professional bondsman has not, so far as the record discloses, been the subject of inquiry by the official board of either the County or City, and he has had no hearing before these boards. It is not permissible that he be tried by proxy. The court was without authority to suspend or revoke his license.

A license to engage in business or practice a profession is a property right that cannot be taken away without due process of law. The granting of such license is a right conferred by administrative act, but the deprivation of the right is a judicial act requiring due process. *Boyce v. Gastonia,* 227 N.C. 139, 41 S.E. 2d 355; *In re Carter,* 195 F. 2d 15 (D. C. 1951), cert. den. 342 U.S. 862; *In re Carter,* 177 F. 2d 75 (D. C. 1949), cert. den. 338 U.S. 900; *Laisne v. Board of Optometry,* 101 P. 2d 787 (Cal. 1940); *In re Greene,* 130 A. 2d 593 (D. C. 1957).

"Article I, Section 17, of the North Carolina Constitution was copied in substance from Magna Charta by the framers of the Constitution of 1776, and prescribes that 'no person ought to be taken, imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty or property, but by the law of the land.' The term 'law of the land' is synonymous with 'due process of law,' a phrase appearing in the Federal Constitution and the organic law of many states." *Surety Corp. v. Sharpe,* 232 N.C. 98, 103, 59 S.E. 2d 593.

"The significance of the law of the land in its procedural aspect is laid bare by a famous phrase used by Daniel Webster in his argument in the *Dartmouth College* case. 'By the law of the land is most clearly intended the general law, a law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial.' The *Trustees of Dartmouth College v. Woodward,* 4 Wheat. 518, 4 L. Ed. 629." *Eason v. Spence,* 232 N.C. 579, 584, 61 S.E. 2d 717.

The court was without jurisdiction to enter the judgment insofar as it purports to suspend or revoke the license of J. J. Mohn to engage in the business of professional bondsman or insofar as it purports to adjudicate any of his rights, and the portion of the judgment affect-

ing him or his license is utterly void. The cause is remanded that a proper order be entered striking out and declaring void all portions of the judgment affecting petitioner's license and right to do business as a professional bondsman. The portion of the judgment relating to Parrish is, of course, not disturbed.

In fairness, it is pointed out that the Attorney General, in his brief, with commendable candor, admitted error.

Error and remanded.